IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOSEPH G. MCDONOUGH, :
:
    Plaintiff, :
:
v. : C.A. No. 16-203-LPS
:
DEBORAH A. GORMAN, BE POSITIVE :
WORKS, LLC, and B+ FOUNDATION, INC., :
:
    Defendants. :

## MEMORANDUM ORDER

At Wilmington this **16th** day of **August, 2017**:

Plaintiff Joseph G. McDonough ("Plaintiff" or "McDonough") brought this action against Deborah A. Gorman ("Gorman"), Be Positive Works, LLC ("LLC"), and B+ Foundation, Inc. ("Inc." and, collectively with Gorman and LLC, "Defendants"). Plaintiff alleges trademark infringement and unfair competition under the Lanham Act and Delaware statutory and common law.

Pending before the Court is Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). (D.I. 10) For the reasons stated below, the Court will **GRANT** Defendants' motion.

**I.    Motion to Dismiss for Lack of Personal Jurisdiction**

    **A.    Legal Standards**

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks personal jurisdiction over the defendant. Determining the existence of personal jurisdiction

1

involves a two-part analysis. First, the Court analyzes the long-arm statute of the state in which the Court is located. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Next, the Court determines whether exercising jurisdiction over the defendant in the state comports with the Due Process Clause of the Constitution. *See id.* Due process is satisfied if the Court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, by a preponderance of the evidence and with reasonable particularity, the existence of sufficient minimum contacts between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987); *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share*, 735 F.2d at 67 n.9.

The Supreme Court has held that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). The Third Circuit instructs that if "the plaintiff's claim is not clearly frivolous, the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging . . . [its] burden." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009). Jurisdictional discovery may be denied "where the party that

2

bears the burden of establishing jurisdiction fails to establish a threshold prima facie showing of personal jurisdiction." *S. Seafood Co. v. Holt Cargo Sys., Inc.*, 1997 WL 539763, at *8 (E.D. Pa. Aug. 11, 1997) (internal quotation marks omitted).

**B.      Contentions**

McDonough contends that the Court can exercise jurisdiction over Defendants under subsections (c)(1) or (c)(3) of Delaware's long-arm statute, which provide the Court with personal jurisdiction over any nonresident who (among other things) "[t]ransacts any business or performs any character of work or service in the State," or "[c]auses tortious injury in the State by an act or omission in this State," respectively. 10 Del. C. § 3104(c)(1), (3). McDonough alleges that subsections (c)(1) and (c)(3) are applicable because Defendants sell and deliver products to Delaware consumers through their website. (D.I. 12 at 7) According to McDonough, "Delaware courts have held that a single direct sale of an infringing product to a Delaware customer satisfies subsection (c)(1) of the Delaware long-arm statute." (*Id.*) (citing *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 2016 WL 4413140, at *5 (D. Del. Aug. 17, 2016)) In his view, it follows that Defendants' two "intentional" shipments to Delaware customers satisfy the Delaware long-arm statute.

As an alternative theory, McDonough asserts that the Court has jurisdiction under Delaware's long-arm statute through a theory of "dual jurisdiction." (*Id.* at 8) Dual jurisdiction may apply where Defendants have: "(1) an intent to serve the Delaware market; . . . (2) . . . this intent results in the introduction of the product into the market[;] and [(3) . . . the] plaintiff's cause of action arises from injuries caused by that product." *Robert Bosch LLC v. Alberee Products, Inc.*, 70 F. Supp. 3d 665, 675 (D. Del. 2014) (internal citations and quotation marks

3

omitted). McDonough argues that these requirements are satisfied because Defendants operate a website accessible in Delaware, received orders and payments from customers in Delaware, and shipped their products into Delaware; also, his causes of action arise from injuries caused by Defendants' products' introduction into Delaware. (D.I. 12 at 8)

C. **Discussion**

McDonough has failed to show that this Court may exercise personal jurisdiction over Defendants.

All of Plaintiff's theories for finding jurisdiction rest on just two sales: (1) a 2013 order placed with Defendant Gorman's prior company; and (2) a 2016 order by Plaintiff's attorneys, placed two months before the filing of McDonough's complaint. (D.I. 14 at 1-2) Neither sale, alone or in combination, suffices to satisfy Plaintiff's burden.

Regarding the first sale, as Defendants point out, Defendant Gorman's prior company "has not operated since 2013 and is not a defendant in this case." (*Id.* at 1) A prior sale by a ***nondefendant*** is not a basis for finding that any ***defendant*** "transact[ed] any business or perform[ed] any character of work" in Delaware ((c)(1)), "act[ed] . . . in this State" ((c)(3)), or "introduc[ed] . . . [its] product into" Delaware (dual jurisdiction).

Regarding the second sale, Plaintiff has presented no evidence from which the Court could find that it was something other than a "trap buy" orchestrated by Plaintiff's attorneys, as it appears from the record that the order was placed by a paralegal at one of McDonough's counsel's law firms. (D.I. 14 at 2; D.I. 13 at 1)[1] Moreover, even if the order was not a "trap

---

[1] Defendants' contention that this transaction was a "trap buy," and not an independent purchase by a third-party, does not appear to be contested by Plaintiff. Although the contention first appeared (as far as Court filings are concerned) in Defendants' reply brief on the instant

4

buy," while the order involved an item that was *delivered* to Delaware, the sale was actually *billed* to an address in North Carolina. (D.I. 14 at 2; D.I. 13-1 at 7) This fact undercuts the weight that can be given to the sale as a basis for satisfying the Delaware long-arm statute. *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1467 (D. Del. 1991) ("Under Delaware law, the shipment of goods into a state by common carrier, without more, does not constitute 'transaction of business' under Section 3104(c)(1). This is especially true where, as here, the shipment was an isolated incident . . . ."). Accordingly, neither of Defendants' two sales to Delaware consumers are sufficient to allow this Court to exercise personal jurisdiction over Defendants under the Delaware long-arm statute.

Other problems plague Plaintiff's effort to establish personal jurisdiction. The second (2016) sale, and the website on which Plaintiff relies, are attributable (on the present record) solely to the LLC Defendant, and not also to Defendant Gorman nor Defendant Inc. At best, then, Plaintiff could only satisfy Delaware's long-arm statute for one of three Defendants. *See generally Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) (rejecting aggregation of co-defendants' forum contacts in determining personal jurisdiction, as "[t]he requirements of *International Shoe* . . . must be met as to each defendant over whom a . . . court exercises jurisdiction").[2] Additionally, jurisdiction under either (c)(1) or (c)(3) requires a showing that "the plaintiff's claim arise[s] from the defendant's activity, that there [is] a 'nexus' between the cause of action

---

motion, the parties were recently required to submit a joint status report. (D.I. 18) There, Defendants repeat their allegation, and Plaintiff at no point disputes it.

[2]And were the Court to have found that it had personal jurisdiction over one but not all Defendants, that would further tip the convenience factors in favor of transfer, as all of Plaintiff's claims could not be resolved together in Delaware, whereas they could all be resolved together in a single action in New York. (*See* below.)

5

and the conduct used as a basis for jurisdiction." *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 695 (D. Del. 1998). Here, the two sales are not the bases for McDonough's causes of action for trademark infringement and unfair competition – both of which are premised on consumer confusion – as the circumstances of both sales do not support any plausible inference of consumer confusion. Finally, the products involved in the two sales were mailed from either New York or Massachusetts (D.I. 14 at 4) and, for purposes of subsection (c)(3), these acts outside Delaware do not appear capable of satisfying the long-arm statute. *See Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1289, 1294 (D. Del. 1990) ("The 'act' of mailing, for purposes of subsection (c)(3), is complete when the material is mailed."); *see also Applied Biosystems*, 772 F. Supp. at 1468 ("[I]n order for a defendant to commit an act in Delaware and be subject to subsection (c)(3), the defendant, or an agent of the defendant, must be present in Delaware when the deed is done.").

Given the Court's conclusion that Plaintiff has failed to meet his burden to show that the requirements of Delaware's long-arm statute – and particularly subsections (c)(1) and (c)(3), as well as the theory of dual jurisdiction – are satisfied, it is unnecessary for the Court to determine whether exercising personal jurisdiction over Defendants would violate their right to Due Process.[3] Further, because Plaintiff has failed to make a prima facie showing of personal

---

[3] Were the Court were to do so, it would confront a serious question as to whether it would "offend traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316, to hale any of the three Defendants into this Court based on the nearly-nonexistent contacts (two "sales" and operation of a website) Plaintiff has shown. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003) ("[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world.").

jurisdiction, the Court will not order jurisdictional discovery.[4]

For the reasons stated above, the Court will grant Defendants' motion.

## II. Motion to Transfer under Section 1404(a)

The Court has concluded it lacks personal jurisdiction. Assuming, arguendo, Plaintiff could be found to have met its burden to establish personal jurisdiction, the Court would nonetheless exercise its discretion to transfer this action to the more convenient venue of the United States District Court for the Southern District of New York ("SDNY") (which is indisputably a district in which this action could have been filed).

### A. Legal Standards

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In seeking transfer, the burden rests squarely on the party seeking a transfer "to establish that a balancing of proper interests weighs in favor of the transfer." *Stewart*, 487 U.S. at 29. That burden is a heavy one: "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted).

---

[4]Defendant Gorman has filed declarations attesting that her repeated reviews of Defendants' records reveal no sales of products in Delaware (other than the 2016 "trap sale"). (*See* D.I. 11-2, 16)

The Third Circuit has identified a set of non-exhaustive private and public interest factors for courts to consider in assessing a transfer request. *See Jumara*, 55 F.3d at 879-80. The private factors include: (1) "the plaintiff's forum preference as manifested in the original choice;" (2) "the defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (internal citations omitted). The public interest factors include: (1) "the enforceablity of the judgment;" (2) "practical considerations that could make the trial easy, expeditious, or inexpensive;" (3) "the relative administrative difficulty in the two fora resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" (5) "the public policies of the fora;" and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (internal citations omitted).

**B.     Discussion**

One overriding circumstance here is that the case involves charitable organizations on both sides. All of the parties are trying to support research and other efforts to fight cancer. (*See generally* D.I. 12 at 4) ("Defendants' charitable fundraising services for cancer treatment and research are identical to Plaintiff's and Plaintiff's licensees' charitable fundraising services . . . .") All of the parties are fairly small, with the organizational Defendants – LLC and Inc. – being smaller than the charitable entity established by Plaintiff.

The only factor weighing against transfer of this case is Plaintiff's choice of forum.

8

Plaintiff has a legitimate reason for preferring Delaware – he lives here, and his charitable organization was founded and continues to operate here (*see* D.I. 12 at 11) – and his forum preference will "not be lightly disturbed." *Jumara*, 55 F.3d at 879. Here, however, the totality of pertinent considerations "clearly favors an alternate forum." *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008).

Defendants' preference to litigate in SDNY is entirely legitimate, as both LLC and Inc. are New York entities, LLC has a principal place of business in SDNY, Inc. has an address in SDNY, Gorman and all of Defendants' business documents are located in SDNY, and none of the Defendants has any place of business, property, bank account, or employees in Delaware. These factors weigh strongly in favor of transfer.

Plaintiff's claims also appear to have arisen outside of Delaware. Trademark infringement and unfair competition claims arise where Defendants use the mark at issue, which the record reveals has principally (to date) been in New York, Florida, Massachusetts, Connecticut, Pennsylvania, and Maryland (*see* D.I. 11 at 6, 8) – and has not been (with the minimal exceptions noted in connection with the jurisdictional analysis above) in Delaware.

The convenience of the parties as indicated by their relative physical and financial condition also weighs in favor of transfer. Defendants are an individual and small, non-profit or charitable organizations who would face hardship, "deplet[ing] their already small profits, which should be devoted to charity," if required to travel to and litigate in Delaware. (D.I. 11 at 8-9; D.I. 14 at 10) Plaintiff is also an individual, who runs a non-profit corporation, but his foundation is larger than Defendants', operates nationwide, and has donated over $1 million in the past two years. (*See* D.I. 1 at 4; *see also* D.I. 11 at 9) Additionally, the record indicates that

9

Plaintiff regularly travels from Delaware to New York for business (*see* D.I. 11 at 9), while there is no similar indication that any Defendant is regularly visiting Delaware.

The remaining private interest factors, as well as all of the public interest factors, are neutral. Accordingly, in the Court's view, particularly considering the unique circumstances pertinent here, Defendants have met their heavy burden to show that the factors strongly favor SDNY as a more convenient forum for this litigation. Therefore, again, Defendants' motion will be granted.

### III. Conclusion

For the reasons stated above, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss or Transfer (D.I. 10) is **GRANTED**.

The parties shall meet and confer and, no later than **August 21, 2017**, submit a joint status report and any proposed order(s) any party requests the Court enter to implement today's decision.

                                                    HONORABLE LEONARD P. STARK
                                                    UNITED STATES DISTRICT COURT